IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| KALEEL WILSON | : | NO. 07-732-1 |

MEMORANDUM

Bartle, J.                                            March 21, 2012

Before the court is the motion of defendant Kaleel Wilson ("Wilson") to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.

Wilson was convicted by a jury on April 14, 2008 of: (1) one count of possession with intent to distribute cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(iii); (2) one count of possession of a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1); and (3) one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).[1]  He was sentenced to 180 months' imprisonment and a term of supervised release of three years.  See United States v. Wilson, No. 07-732-1 (E.D. Pa. July 16, 2008).  This sentence reflected a mandatory minimum sentence of ten years' imprisonment for his conviction under 21 U.S.C. § 841 and a consecutive five year mandatory

---

1. Wilson was tried along with co-defendant Nafice Fields. Fields was convicted of one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

minimum sentence for possession of a firearm in relation to a drug trafficking crime under 18 U.S.C. § 924(c).  His conviction was affirmed on appeal.  See United States v. Wilson, 347 F. App'x 778 (3d Cir. 2009), cert. denied, 131 S. Ct. 633 (2010).

Wilson subsequently filed a pro se § 2255 petition in which he alleges a deprivation of his Sixth Amendment right to effective assistance of counsel as a result of various errors made at the trial and on appeal.  Wilson requests that we vacate his conviction and order a new trial.  The court appointed counsel and held an evidentiary hearing regarding one of his allegations.

I.

The underlying facts, in the light most favorable to the government, are as follows.  On the evening of July 5, 2007, an individual named Desmond Davis ("Davis") came to the Philadelphia Police Southwest Detectives Division to report that Wilson and his co-defendant Nafice Fields ("Fields") were driving around his neighborhood in a white minivan and were threatening to kill him.  Davis also asserted that Fields and Wilson possessed weapons and narcotics inside the van.

As a result of this information, police officers Jared Netzer ("Netzer") and Ryan Murphy ("Murphy") drove to the area of 53rd Street and Woodland Avenue and stopped a white minivan. Inside were Wilson, Fields, and a third individual named Baba Tunkara ("Tunkara").  Wilson was driving the vehicle, and Tunkara was in the front passenger seat.  Fields was seated in the back

third row of the van.  Officer Murphy discovered a handgun in Tunkara's left pocket.  Officer Netzer then removed $1,388 from Wilson.  In addition, the officers discovered 115 packets of narcotics in the visor above the driver's seat.

At the trial of Wilson and Fields, the government called nine witness including Davis, who testified that he had seen Wilson selling narcotics from the white van on the day in question.  Tunkara also testified that, while in the van, he witnessed Wilson reaching above the driver's side visor and handing items to people in return for money.[2]  According to Tunkara, the gun found in his pocket belonged to Wilson and Wilson had handed him the gun shortly before police stopped the van.  No fingerprint analysis of the gun was performed.

Hildebert Prawl was also a witness at trial.  He was the Hertz Corporation manager at the Philadelphia International Airport where Wilson rented the white van.  Based on the Hertz business records, Prawl pinpointed the rental to have occurred at approximately 4:00 p.m. on July 5, 2007.  He further explained the procedures that Hertz uses to clean its vehicles between rentals.  An agent of Hertz would vacuum the entire vehicle and remove any trash or other items from the seats, glove compartment, floor, trunk, and other areas.  Prawl identified

---

2.  Tunkara was not named in the indictment against Wilson and Fields.  Instead, he was charged by the Commonwealth of Pennsylvania with various narcotics and firearm offenses in connection with this incident.  See Pennsylvania v. Tunkara, No. CP-51-CR-0011210-2007 (Ct. Com. Pl. Phila. 2007).

several government exhibits which were pictures of vehicles being cleaned by Hertz employees.

On cross-examination, Prawl admitted that he had not personally rented the vehicle to Wilson on the day in question. He also conceded that the vehicle in the photographs offered by the government was not the actual vehicle rented by Wilson.

During deliberations, the jury sent the court two questions. First, the jury asked "[c]an we get a copy of Baba Tunkara's testimony?" The court declined to do so. Instead, the court informed the jury that "unfortunately, that is not available, and you're going to have to rely on your recollection of his testimony, as well as the testimony of all other witnesses in the case."

At the same time, the jury also inquired "[w]hat personal information of the jurors has been revealed to the defendants? Address?" The court told the jury:

> In this court, the addresses of the jurors are never revealed to any of the lawyers, any of the parties, in any case, whether it's civil or criminal, and while there is a list with names that is passed back and forth when the jury selection process takes place, those lists are always returned to the Court after the jury selection has been made.
>
> I also remind you that of course this case must be decided solely on the evidence presented to you and the law as I have given it to you. You may return to the jury deliberation room.

Counsel for Wilson did not object to the court's responses to either of the jury's questions.

On April 14, 2008, the jury returned a verdict of guilty on all counts as to Wilson.

II.

Wilson alleges ineffective assistance of counsel under the standard set forth in Strickland v. Washington. 466 U.S. 668 (1984). In his pro se petition, Wilson contends that counsel was ineffective for failing to: (1) object to the testimony of Prawl, the Hertz employee who testified for the government; (2) request an accomplice jury instruction as to Tunkara; (3) interview and call Wilson's girlfriend Yolanda Henderson and his co-defendant Fields as witnesses; (4) move for a severance of the trial from Fields; (5) cross-examine properly government witness Davis; (6) advise Wilson of his right to testify; (7) discover and object to the fact that portions of the trial were not recorded or were recorded improperly; (8) find out what assistance was offered by the government to Tunkara in return for his testimony; and (9) advise Wilson of the possibility of a cooperation plea agreement with the government.

In addition, Wilson raises two points previously raised by Fields in his § 2255 petition. Specifically, Wilson asserts that trial counsel was ineffective by failing to: (1) object to the court's decision not to read back Tunkara's testimony; and (2) ask the court to voir dire the jury to ensure that it was still impartial after the jury questioned whether Fields and Wilson had access to their personal information.

Under the Strickland standard, Wilson bears the burden of proving that: (1) counsel's performance was deficient; and (2) he suffered prejudice as a result. Id. The first prong requires that "[counsel's] performance was, under all the circumstances, unreasonable under prevailing professional norms." United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). Our scrutiny of counsel's performance is highly deferential. We presume that counsel's actions were undertaken in accordance with professional standards and as part of a "sound trial strategy." Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

To satisfy the prejudice prong, Wilson must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." Id. When ruling on a § 2255 petition, the court may address the prejudice prong first "and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced." Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006).

Wilson first asserts that he was denied effective assistance of counsel with respect to government witness Prawl. As discussed above, Prawl testified from Hertz records that Wilson rented the white minivan at approximately 4:00 p.m. on July 5, 2007. He also explained the procedures that Hertz uses to clean its vehicles between rentals. Defense counsel objected

to Prawl's testimony because Prawl did not clean the particular vehicle rented by Wilson on the day in question. The court allowed Prawl to testify about the general procedures Hertz uses to clean and inspect its vehicles.

Defense counsel cross-examined Prawl extensively. Prawl acknowledged that he was not the employee who rented the vehicle to Wilson on the day in question and had not personally inspected it. He also stated that the vehicle featured in government exhibits was not the actual vehicle rented by Wilson. Based on this cross-examination, the jury understood that Prawl did not have first-hand knowledge of the actual vehicle rented by Wilson but instead was testifying about general company procedures. Counsel's performance was reasonable under these circumstances and did not prejudice Wilson.

Wilson next asserts that his counsel was ineffective for failing to request an accomplice instruction regarding the credibility of government witness Baba Tunkara. That instruction provides:

> You have heard evidence that (name of witness) ... participated in the crime charged; or has made a plea agreement with the government; or has received a promise from the government that (he)(she) will not be prosecuted; or has received a promise from the government that (his)(her) testimony will not be used against (him)(her) in a criminal case; or received a benefit from the government in exchange for testifying.
>
> (His)(Her) testimony was received in evidence and may be considered by you. The government is permitted to present the testimony of someone who has ... reached a plea bargain

> with the government [or] received a benefit
> from the government[] in exchange for
> (his)(her) testimony, but you should consider
> the testimony of (name of witness) with great
> care and caution. In evaluating (name of
> witness)'s testimony, you should consider
> this factor along with the others I have
> called to your attention. Whether or not
> (his)(her) testimony may have been influenced
> by the (plea agreement)(government's
> promise)(alleged involvement in the crime
> charged) is for you to determine. You may
> give (his)(her) testimony such weight as you
> think it deserves.

Third Circuit Model Criminal Jury Instructions § 4.19.

Our Court of Appeals has held that this accomplice charge "is advisable when the jury has not otherwise been sufficiently alerted to the credibility concerns posed by the testimony of witnesses over whom the government wields particular power to reward or punish." United States v. Isaac, 134 F.3d 199, 204 (3d Cir. 1998). This is because accomplices turned government informants have "strong incentives to fabricate or mold their testimony as the government desires in order to escape prosecution, lighten their sentences, obtain remuneration or receive protection." Id. The decision to give such a charge is a matter of the court's discretion. Id. at 205. Where a court has permitted defense counsel to cross-examine the accomplice witness and has instructed the jury to consider any witness's self-serving motives, the failure to give a specific accomplice instruction is not reversible error. Id.

Here, an assistant United States Attorney appeared at Tunkara's change of plea in the Court of Common Pleas of

Philadelphia County to advise of his cooperation in the federal action. After his testimony against Wilson and Fields, Tunkara received five years' probation under a plea agreement and several of the charges against him were nolle prossed.[3] See Pennsylvania v. Tunkara, No. CP-51-CR-0011210-2007 (Ct. Com. Pl. Phila. June 24, 2008). This represented a significant departure from the sentence Tunkara faced if he chose to stand trial.

Counsel for Wilson did not request an accomplice instruction at the charge conference but made an oral request for such instruction on the morning the court instructed the jury. The court denied Wilson's request. Nonetheless, defense counsel had extensively cross-examined Tunkara at trial on the assistance he would receive in return for his testimony against Wilson. Specifically, counsel asked Tunkara:

> "You do know that you could be deported back to your home country, correct?"
>
> ....
>
> "You wanted to get yourself out of trouble, right?"
>
> ....
>
> "[Police] told you that if you were to give this information to him and you would testify, is that correct, that they would help you with your case, is that correct?"
>
> ....

---

3. Because this information is a matter of public record and has also been provided by the government in response to Wilson's petition, Wilson's request for an evidentiary hearing "into the assistance the prosecution provided to Mr. Tunkara" will be denied.

> "[I]f you are convicted of those charges ... you are facing a lot, a lot of time in jail, right?
>
> ....
>
> "You are expecting those charges to be dismissed?"

Tunkara responded affirmatively to all of these questions. Defense counsel also emphasized Tunkara's lack of credibility during his closing argument. Significantly, the court instructed the jury in its charge "to consider each witness' ... motive to falsify," whether the witnesses "have a particular reason not to tell the truth," if any witness "ha[d] a personal interest [in] the outcome of the case," and whether "the witness demonstrate[s] any bias, prejudice, or hostility."

This issue was fully briefed on appeal. Our Court of Appeals determined that this court's instructions at trial "largely covered the substance of the accomplice witness instruction" and that Tunkara's bias was "explored ... extensively on cross-examination." See Wilson, 347 F. App'x at 780-81. Accordingly, the Court of Appeals affirmed. Id. at 782. For these same reasons, we conclude that Wilson was not prejudiced by the court's failure to give the specific accomplice instruction.

Wilson next alleges that he was prejudiced by his counsel's failure to interview and call his girlfriend Yolanda Henderson as a witness. According to Wilson, Henderson would have testified that she "was actually in the mini-van during most

of the evening" on which the incident occurred and "did not observe any of the criminal activity that Mr. Tunkara" witnessed.

"The decisions of which witnesses to call to testify are strategic and therefore left to counsel." United States v. Ciancaglini, 945 F. Supp. 813, 823 (E.D. Pa. 1996). Counsel need not call every witness but rather only those likely to assist in the case. Id.; see also Diggs v. Owens, 833 F.2d 439, 446 (3d Cir. 1987).

Defendant was not prejudiced by counsel's failure to call Henderson as a witness. Henderson was only present in the van "most" of evening. Significantly, she was not present in the van at the time of the arrest. Thus, Henderson could not offer any testimony regarding Wilson's handing of the gun to Tunkara. Additionally, her bias due to her romantic involvement with Wilson is obvious. Finally, we have no affidavit from Henderson or other evidence before us that she would have testified as Wilson maintains.

In a similar vein, Wilson asserts that counsel was ineffective for failing to call his co-defendant Fields to testify. According to Wilson, his counsel failed to file a motion to sever his trial from that of Fields so that Fields could testify. Wilson maintains that Fields's testimony would have raised doubts regarding the veracity of Tunkara's testimony.

Wilson's claims regarding Fields are unavailing. Trial counsel did in fact file a motion to sever, on the basis that a prior statement of Fields would inculpate Wilson and exculpate

-11-

Fields. This motion was denied. As a co-defendant in this case, Fields could not be compelled to testify under the Fifth Amendment to the United States Constitution even if the trial were severed. See United States v. Barber, 442 F.2d 517, 529 & n.22 (3d Cir. 1971). Additionally, Fields had a prior conviction for manslaughter for the shooting of the brother of government witness Desmond Davis. Because Fields was unlikely to testify on behalf of Wilson and was vulnerable to impeachment, Wilson was not prejudiced by counsel's failure to move for a severance on this ground. See, e.g., United States v. Gonzalez, 918 F.2d 1129, 1137 (3d Cir. 1990).

Wilson also maintains that counsel was ineffective for failing adequately to cross-examine government witness Davis on his "vendetta" against Fields and Wilson. This "vendetta" arose because, as mentioned above, Fields had fatally shot Davis's brother years before. The court limited the testimony of Davis to avoid any reference to the shooting in order to prevent prejudice to the defendants and therefore counsel was precluded from cross-examining Davis on this issue. Trial counsel cross-examined Davis on other issues regarding his credibility, including inconsistencies between his testimony on direct examination and the signed statement he provided to police. Consequently, Wilson has not shown that counsel's performance was deficient with respect to the cross-examination of Davis.

Wilson further asserts that counsel never advised him of his right to testify. However, before trial we questioned

Wilson in open court: "[a]re you aware that you have a right to testify in your own defense" and "[a]re you also aware that you have a right not to testify?" Wilson responded affirmatively to both questions. The court then advised that "the decision whether or not to testify is your decision alone, not your attorney's decision" and that "I suggest that you take the advice, or at least listen to the advice of your attorney in that regard, but ultimately it's your decision to make?" Wilson responded affirmatively to all of these questions. Because Wilson's current position directly contradicts his earlier sworn testimony, this claim will be rejected.

Wilson also alleges that counsel was ineffective because portions of the trial proceedings were inaudible or not recorded. It is unclear how counsel would know during the trial that the recording system was not functioning properly. Moreover, Wilson does not specify how he has been prejudiced by this oversight. We therefore find this claim is not a basis for providing relief to Wilson under § 2255.

Next, Wilson contends that counsel failed to discuss with him the option of a cooperation plea agreement. We held an evidentiary hearing on this claim. At the hearing, Wilson testified that his trial counsel, Nino Tinari, Esquire, said that he did not represent people who cooperated with the government. According to Wilson, Tinari told him that those people were "rats" and refused to discuss options for disposing of the case other than trial.

Tinari recited a very different version of events. He testified that Wilson did not wish to plead guilty and retained him for the purpose of trial. Tinari further stated that he informed Wilson of his options and warned that, if Wilson proceeded to trial, he could be convicted.

A defendant has the right to make a reasonably informed decision regarding whether to accept a plea offer. Day, 969 F.2d at 43. Counsel's failure to advise a client of the possibility of a guilty plea and potential benefits such as a reduction in sentence can be the basis for an ineffective assistance of counsel claim. Id.

We find the testimony of Tinari to be credible and Wilson's contrary testimony not to be credible. Wilson was aware of his right to plead guilty but chose instead to stand trial. We note that Wilson faced two mandatory minimum sentences, and therefore his sentencing range under the United States Sentencing Guidelines was not amenable to negotiation with the government unless he cooperated sufficiently to warrant a motion under 18 U.S.C. § 3553(e). Wilson's assertion concerning the failure of his counsel to discuss with him a cooperation plea agreement is without merit.

Finally, Wilson argues that his counsel was ineffective for failing to object to the court's refusal to read back the testimony of Tunkara and for not requesting a voir dire of the jury in response to their question, "What personal information of the jurors has been revealed to the defendants? Address?"

At trial, a court "has broad discretion in deciding whether to accede to a jury's request for a reading of testimony." United States v. Zarintash, 736 F.2d 66, 69-70 (3d Cir. 1984). The court may decline to read back testimony where: (1) the request would slow the trial because the testimony at issue is lengthy; or (2) there is a danger that the jury may give undue weight to the testimony. United States v. Bertoli, 40 F.3d 1384, 1400 (3d Cir. 1994).

The testimony of Tunkara totaled 67 pages and had not yet been transcribed at the time of the request. Tunkara testified for approximately one hour and thirteen minutes. Re-reading or playing back the testimony of Tunkara to the jury would have unduly slowed the progress of the trial.

The court properly instructed the jury to consider their recollection of Tunkara's testimony along with "the testimony of all other witnesses in the case," including Davis and the arresting officers. Reading or playing back Tunkara's testimony alone would have given undue weight to his testimony. Accordingly, counsel was not ineffective for failing to object.

Similarly, counsel was not ineffective for failing to request a voir dire of the jury after the jury questioned whether the defendants knew any of the jurors' personal information such as their addresses. In Iyer v. Everson, our Court of Appeals considered a similar contention. 238 F. App'x 834, 837 (3d Cir. 2007). There, the plaintiff brought an employment discrimination action against the Internal Revenue Service ("IRS"). Id. at 835-

36.  During deliberations, a juror asked the deputy clerk how the jurors could be certain that the IRS would not retaliate against them if the jury returned a verdict in the plaintiff's favor.  Id.  The court reassured the jury by explaining that "as far as who you are, after we choose you, the only person that knows who you are, is I.  In other words ... what's known as the jury sheets are no longer in the possession of any of the parties."  Id.  The Court of Appeals concluded that this instruction was appropriate and affirmed the judgment of the District Court.  Id. at 838.

Here, the court explained that "the addresses of the jurors are never revealed to ... any of the parties" and that the lists of juror names were returned to the court after selection.  The court also reminded the jury to decide the case "solely on the evidence presented to you and the law as I have given it to you."  There is no reason to suspect that the jury's verdict was the result of fear or that voir dire of the jury was necessary.  Under those circumstances, Wilson's claim is unavailing.

Accordingly, the petition of Wilson under § 2255 will be denied.  He has not established that his counsel was ineffective.  A certificate of appealability will not issue.